J-A06015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID RUSSELL KELSEY | : | |
| | : | |
| Appellant | : | No. 485 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 27, 2020
In the Court of Common Pleas of McKean County Criminal Division at
No(s): CP-42-CR-0000414-2018

BEFORE: BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: May 18, 2021**

Appellant, David Russell Kelsey, appeals from the aggregate judgment of sentence of 48 to 96 months' incarceration, imposed after a jury convicted him of possession with intent to deliver ("PWID"), 35 P.S. § 780-113(a)(30), and criminal use of a communication facility, 18 Pa.C.S. § 7512(a). Herein, Appellant challenges the sufficiency of the evidence to sustain his convictions. After careful review, we affirm.

Appellant was convicted of the above-stated offenses based on evidence that a police informant, Amber Stuckey, purchased drugs from Appellant after communicating with him over Facebook Messenger. After a jury convicted Appellant of the above-stated crimes, he was sentenced on February 27, 2020, as set forth *supra*. Appellant filed a timely post-sentence motion, which was denied. He then filed a timely notice of appeal, and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors

complained of on appeal. The trial court filed a Rule 1925(a) opinion on June 3, 2020. Herein, Appellant states one issue for our review: "Whether there was sufficient evidence to find [Appellant] guilty beyond a reasonable doubt of [PWID] and criminal use of a communication facility?" Appellant's Brief at 4 (unnecessary capitalization omitted).

To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno,* 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

We will first address Appellant's challenge to the sufficiency of the evidence to sustain his PWID conviction.

> To convict a person of PWID, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. In determining whether there is sufficient evidence to support a PWID conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.

*Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. 2005) (internal citations omitted).

In this case, Appellant argues that the evidence was insufficient to prove his identity as the person who sold drugs to Ms. Stuckey. He stresses that "Ms. Stuckey went to the police with the sole purpose of avoiding a mandatory state sentence for a [third] offense [of driving under the influence]. Accordingly, Ms. Stuckey possessed substantial motivation to produce a favorable outcome for her own benefit." Appellant's Brief at 13 (citation to the record omitted). Appellant further argues that, although Ms. Stuckey's car was equipped with a video-recording device at the time of the drug sale, the recording did not depict the drugs being sold to Ms. Stuckey, or the face of the person who allegedly sold them to her. There was also no DNA or fingerprint testing of the drugs Ms. Stuckey turned over to police. Therefore, Appellant insists that the evidence failed to prove his identity as the seller of those drugs.

The record demonstrates that Appellant's argument is wholly meritless. Ms. Stuckey testified that she communicated on Facebook Messenger with Appellant about purchasing drugs. N.T. Trial, 9/16/19, at 19. In those messages, which were entered into evidence at trial, Appellant agreed to sell Ms. Stuckey 20 Vicodin pills for $80, and he directed her to meet him in front of his house to complete the sale. *Id.* at 22, 23; 36-37; 41. Ms. Stuckey communicated this information to Detective Michael Ward. *Id.* at 136. Detective Ward told Ms. Stuckey to come to the police station before meeting

- 3 -

Appellant, at which time he provided her with $80 of pre-recorded money. *Id.* at 138. Ms. Stuckey was then strip-searched, and her vehicle was also searched. *Id.* at 142. Detective Ward placed a recording device in Ms. Stuckey's car, and then followed her to Appellant's residence, where she parked outside. *Id.* at 143, 144. Detective Ward parked in a Kwik Fill gas station a short distance away. *Id.* at 144.

Shortly after Ms. Stuckey parked in front of Appellant's house, Detective Ward observed "a male that was of the same size type" and who had "the same walk" as Appellant exit the front door of the home "and get directly into the passenger seat of [Ms. Stuckey's] vehicle." *Id.* at 145. Detective Ward indicated that he is familiar with Appellant from the community. *Id.* Specifically, the detective testified that he knows Appellant's voice, body type, gait, and his tattoos. *Id.* After Appellant was in Ms. Stuckey's vehicle a short time, he exited, and Detective Ward followed Ms. Stuckey back to the police station, never losing sight of her vehicle. *Id.* at 146. Once at the station, he approached Ms. Stuckey's car and she "handed [him] a small plastic bag" that contained 20 "white, oblong pills" that were later determined to be Vicodin. *Id.* Detective Ward further testified that he reviewed the video from the recording device in Ms. Stuckey's car, and he immediately recognized the seller's face and voice as that of Appellant. *Id.* at 150.

Additionally, another officer, Sergeant Todd Erikson, surveilled the drug sale between Appellant and Ms. Stuckey. Sergeant Erikson testified that he was parked in a vehicle directly in front of Ms. Stuckey's car. *Id.* at 67.

Sergeant Erikson explained that about one minute after Ms. Stuckey parked, he observed a man leave Appellant's home, get into Ms. Stuckey's vehicle, and then exit about one minute later. *Id.* at 67-68. Sergeant Erikson, who is familiar with Appellant from other interactions with him, watched the video recording of the drug sale and identified Appellant as the individual who sold drugs to Ms. Stuckey. *Id.* at 68, 69. Specifically, the sergeant testified that Appellant has tattoos on his arm that match those seen on the drug-seller's arm in the video. *Id.* at 85.

We conclude that this evidence was sufficient to identify Appellant as the individual who sold drugs to Ms. Stuckey. Ms. Stuckey's identification of Appellant was corroborated by the fact that the drug sale occurred outside Appellant's home, and both Detective Ward and Sergeant Erikson identified Appellant from their in-person observations and the recording of the drug sale. While neither the detective nor the sergeant could actually see the drugs being passed from Appellant to Ms. Stuckey, she and her vehicle had been thoroughly searched before she met with Appellant, and Detective Ward kept her in sight before, during, and after she met with Appellant. Thus, Ms. Stuckey's testimony that Appellant sold her drugs, which she turned over to Detective Ward immediately after meeting with Appellant, was sufficient proof

that she obtained those drugs from Appellant.[1]  Consequently, the evidence supports Appellant's conviction for PWID.

Next, Appellant claims that the Commonwealth failed to prove he committed criminal use of a communication facility.  That offense is defined as follows: "A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act." 18 Pa.C.S. § 7512(a) (footnote omitted).

Here, aside from setting forth the definition of this offense, Appellant's entire argument in support of his sufficiency claim is as follows:

> The totality of the Commonwealth's evidence is that [Ms.] Stuckey communicated with a Facebook account purported to be … Appellant['s] regarding a drug sale.  However, as Appellant contended at trial, the only information provided that Appellant was the person communicating back with [Ms. Stuckey] is the use

---

[1] We also point out that the jury heard Ms. Stuckey's testimony that, in exchange for acting as an informant for police and testifying against Appellant, she was receiving a favorable sentencing recommendation for her DUI conviction.  **See** N.T. Trial at 15-16.  To the extent Appellant avers that the jury should have disbelieved her testimony because of this favorable treatment, his assertion goes to the weight, not the sufficiency of the evidence. **See Commonwealth v. Gaskins**, 692 A.2d 224, 227 (Pa. Super. 1997) (stating that "credibility determinations are made by the fact finder and that challenges thereto go to the weight, and not the sufficiency, of the evidence").

of the word "kid" or "kiddo[."[2]] There was no additional information testified to by [Ms.] Stuckey indicating … that Appellant was the one sending the messages. Additionally, … there was no specific information contained in the Facebook messages indicating that there was … discussion of a drug transaction. Finally, … there was no evidence indicating that … Appellant was using a communication facility or that it could be positively identified as Appellant sending said messages. Therefore, Appellant avers that there was insufficient evidence presented by the Commonwealth of criminal use of a communication facility….

Appellant's Brief at 14-15 (unnecessary capitalization and citation to the record omitted).

Appellant's brief and legally unsupported argument is unconvincing. Ms. Stuckey testified that she had communicated with Appellant on Facebook Messenger prior to this occasion, and that "[h]e always addressed [her] as '[h]ey, kid' or [']kid['] … when he was speaking to [her]." N.T. Trial at 20. In the messages that preceded the instant sale, the person referred to Ms. Stuckey as "kid." *Id.* Additionally, the sender of the messages directed Ms. Stuckey to come to "my place" to purchase 20 Vicodin pills for $80. *Id.* at 22-23. Ms. Stuckey then proceeded to Appellant's residence and purchased 20 Vicodin pills for $80. Ms. Stuckey, Detective Ward, and Sergeant Erikson all provided testimony demonstrating that Appellant was the person that sold the drugs to Ms. Stuckey, thus corroborating that he was also the person that communicated with her via Facebook Messenger to arrange the drug sale.

---

[2] Ms. Stuckey testified that Appellant referred to her by the nickname, "kid" and, in the messages preceding the sale in the instant case, the person communicating with Ms. Stuckey referred to her as "kid." N.T. Trial at 20.

Accordingly, the evidence was sufficient to prove that Appellant committed criminal use of a communication facility.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2021